## RALPH S. ROUNDS ET AL., Complainants,

### *v.*

## ST. JOHNS GAS COMPANY, LTD. ET AL., Dfts.

San Juan, Equity, No. 934.

### EQUITABLE CONVERSION.

Contracts—Agreements between Lawyer and Client.

    1. Agreements between lawyer and client are construed favorably to the client.

Contracts—Equitable Conversion.

    2. Where the parties to a contract agree that land shall be sold and turned into money, even if the land be not actually sold, it will be considered as having been sold for the purposes of the contract, under the doctrine of equitable conversion; and while in the case

at bar there was no definite agreement that the land should be turned into money, the defect was cured by the consent decree entered into by the parties.

Equitable Conversion—Date of Taking Place.
      3. The date of the taking effect of the equitable conversion is the date fixed for the sale of the land.

Opinion filed July 26, 1916.

---

## Statement of Facts.

The bill in this case was filed by the complainants on April 8, 1913. It sets up that the defendant the St. Johns Gas Co., Ltd., was the owner of a perpetual usufruct under the title "á censo redimible," of certain lands on the west side of the Marina at San Juan. That in 1885 the company made a mortgage for £16,000 to certain trustees for the holders of debenture stock, the mortgage being duly inscribed. That in 1905 the United States filed suit against the company claiming the said lands, and thereupon defendant William Korber, as agent of the St. Johns Gas Company, Ltd., made a contract with the complainants, a firm of lawyers in New York with a resident partner in San Juan, the contract being dated December 27, 1906, and providing "2. If we collect after suit in Porto Rico, our fee shall be 20 per cent of the amount recovered, with a minimum fee of $2,000." The fee was to be larger in case of appeal, and no fee was to be paid if the case was not won. The fees "shall only be paid when the gas works and property are sold, if the issue of the case be that you sell them to the naval authorities or to other parties, but should the issue be such that the St. Johns Gas Company retains possession of the works and property, or should the said

Rounds v. St. Johns Gas Co.

works and property not be sold within six months of the final decision, our fee shall be payable as soon thereafter as proper appraisement of their value by competent parties may be obtained, their value being for the purpose of this contract considered to be the amount recovered by you. The parties for such appraisement shall be chosen as follows: One by the gas company, one by ourselves, and a third to be selected by these two." The contract was in the shape of a letter, but was duly accepted. That the action resulted in favor of the defendant and judgment was entered October 25, 1909, and no appeal was taken. That during the two years within which an appeal could have been taken, a further contract or ratification in writing was executed in 1910 between plaintiffs and the holders of the debenture stock of the St. Johns Gas Company, Ltd. This new agreement provides that if the property shall not amount in value to $15,000, the present plaintiffs shall receive an amount equal to one half the property, or property of that value shall be transferred. In the event that within six months after the final judgment in favor of the St. Johns Gas Company arrangement be made for a sale if all the lots and buildings, or a substantial part thereof, at a satisfactory price, the debenture trustees agree to join in a conveyance. Out of the proceeds shall be paid to the present plaintiffs the amount of their fee. In case sale is not made within such six months, the value of the lots shall be appraised by appraisers appointed in a certain manner, and, unless the present plaintiffs shall have already received their fee, the said trustees shall join in a conveyance to them, so as to give good title to one or more of said lots with buildings thereon, the appraised value of which is approximately equal to the said fee, this to be accepted by them in full satisfaction. The present plaintiffs also

Rounds v. St. Johns Gas Co.

by this ratification "shall be entitled to their option to purchase at such appraised value any lot or lots the appraised vlaue of which shall exceed the amount for the time being due to them hereunder, paying in cash only the amount by which such appraised value shall exceed the sum so due to them."

The bill proceeds to allege that the plaintiffs have continually made efforts to obtain their fees, but defendants have failed and refused to take any steps. March 24, 1913, complainants called on William Korber to appraise the property, but he refused, on the ground that he was no longer authorized. The bill further avers that the officers and directors of the St. Johns Gas Company are unknown and unascertainable, many of them being dead, and the remaining officers and shareholders take no interest in its affairs. Therefore the bill avers that the only method of obtaining complainants' rights is for the court to take into its custody the property of the company, and dispose thereof, and adjudicate and satisfy, so far as may be, the claims of all the parties hereto. The debenture holders and trustees maintain a position of apathy and inaction, but defendant Korber, or Korber & Company, have been managing the property and collecting rents. The complainants aver that "by virtue of the retainer agreements herein set forth, complainants are entitled to 20 per cent of the net amount of said rentals received, since October 25, 1909." And by reason of the contracts and services of attorneys, complainants claim a first lien for their fees and disbursements against the property and rentals.

The prayer was for first lien upon the property and rents and profits since October 25, 1909, or to accrue, appraisal, determination of the value of the services, appointment of receiver,

Rounds v. St. Johns Gas Co.

foreclosure of complainants' lien by sale, and distribution of the remainder among the other parties.

An answer was filed, and bill of intervention of the United States, and other proceedings, had.

Finally, on June 30, 1913, a consent decree was entered, appointing H. L. Cochrane as receiver, and directing him to proceed to sell the property, provisions being made for sale subject to the censo, and for sale paying off the censo of the United States, that being fixed at $13,256, besides $6,416.68 overdue censo payments. The decree fixes the minimum bid at $45,000 net. As to complainants, it was provided that,—

"7. Complainants, Ralph S. Rounds, Eugene H. Hatch, Frank A. Dillingham, Thomas M. Debevoise and Edward S. Paine, a copartnership doing business under the firm name and style of Rounds, Hatch, Dillingham, & Debevoise, E. S. Paine, resident partner, are decreed and adjudged entitled to recover 20 per cent of the net proceeds of said sale, after deducting the necessary costs and expenses thereof, and the expenses, to date of said sale, of the receivership, said net proceeds being the total amount of the sale in case the purchaser elects to continue with the burden of the censo, and being the amount paid minus the capital amount of $13,250 in case the purchaser elects to pay off the capital of said censo, and the receiver is hereby ordered to pay complainants said 20 per cent of the said proceeds of said sale as above set forth, forthwith, upon receipt by him thereof, and also to pay said complainants their reasonable and proper disbursements and expenses accrued by them.

"8. The claim of complainants for 20 per cent of the net proceeds of rents and profits accruing from the property since October 25th, 1909, and the claims of respondents, Korber & Com-

Rounds v. St. Johns Gas Co.

pany, to percentages of the proceeds of the sale of said property, being claims disputed by the pleadings, are hereby reserved for decision, and will be adjudicated at a subsequent hearing of this cause, and the final disposition of the sums in the hands of the receiver after payment of complainants' 20 per cent, as herein provided for, will be likewise hereafter adjudged."

Two efforts were made to sell the property, but satisfactory bids were not received. Thereupon, on December 14, 1915, the complainants filed a petition reciting the foregoing facts, and claiming that by virtue of the two contracts and the above decree the complainants "are the equitable owners of the undivided one-fifth interest in and to all the property of the defendant St. Johns Gas Company, and as such should receive one fifth of the rents and profits" accrued, or to accrue, and asking a decree accordingly, and for general relief. By answer filed February 16, 1916, the St. Johns Gas Company and the debenture trustees admitted most of the allegations of the petition, but denied the amount of rental alleged, averring that on September 30, 1915, the receiver only had on hand $3,359.17, as shown by his report. They deny the claim as to interest in rents and profits.

Upon the hearing the claim as to rents and profits was reduced to the net amount thereof, and these were agreed upon as ———— dollars.

*Mr. F. E. Neagle* for complainants.

*Mr. Geo. D. Graves* for defendants.

HAMILTON, Judge, delivered the following opinion:

1. The argument took a wider range than seems necessary un-

the admitted facts of the case. The question whether the second agreement, that of 1910, with the trustees of the debenture holders, bound the St. Johns Gas Company need not be considered for the present. There seems to be difficulty in finding out who are the present directors of the St. Johns Gas Company, and so there might be difficulty decreeing any action on the part of said company; but at least the company is a defendant to this cause and has properly appeared by counsel, and is therefore bound by the proceedings in the cause. It is not disputed that the first agreement, that of 1906, is binding upon the company. It is true that agreements between lawyer and client are construed favorably to the client. Hitchings v. Van Brunt, 38 N. Y. 335. But there does not seem to be in the agreement at bar any doubt to be resolved in favor of one party as against the other. If anything, the attorneys in the case seem not to have protected their own interest sufficiently. They made a provision for arbitration, but not for what has happened, that is to say, the failure of the company to act. Even in the later proceeding for sale, they agree to a valuation which it seems is above the market value of the property, and so no fund has been produced by the consent decree.

However, whatever question may be made about either of the two agreements which are in evidence, they are resolved by the decree of this court June 30, 1913, which was entered by consent of all parties, and this must be the basis of the decision herein.

2. It is claimed in this case that the principle of equitable conversion applies. This principle has been thus expressed in a leading case: "Nothing was better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be con-

sidered as that species of property into which they are directed to be converted; and this, in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise, and whether the money is actually deposited, or only covenanted to be paid, whether the land is actually conveyed, or only agreed to be conveyed. The owner of the fund, or the contracting parties, may make land money, or money land. . . . The cases established this rule universally." Fletcher v. Ashburner, 1 Bro. Ch. 497, 28 Eng. Reprint, 1259, per Sir Thomas Sewell, M. R.

No express declaration by the owner is needed that the land shall be treated as money, although not sold; the only essential requisite is an absolute expression of an intention that the land shall be sold and turned into money. 3 Pom. Eq. Jur. § 1159. The true test is the simple one, whether the instrument governing the case absolutely directed that the real estate be turned into personal property. This is purely an equitable doctrine, and is not to be construed as taking the place of a conveyance of land, which can be only governed by the local law. Equitable conversion, if found in this case, would not give the plaintiffs an undivided fifth interest in the land. That could only result from a deed by or on behalf of the owner. Such a finding, however, would declare that as between the parties to this suit, one fifth of the land is to be treated as its equivalent in money, and that its income would belong to the plaintiffs from the date that the conversion would apply.

In this case there was originally not only no agreement as to the plaintiffs having one fifth interest in the land, but not a definite one that the land should be sold to pay the 20 per cent fee. But this court by its decree of June 30, 1913, by consent,

found from all the facts of the case that the land should be sold in order to pay the 20 per cent fee to the plaintiffs, and in effect decreed a lien upon it for that purpose. This consent decree takes the place of any further agreement, and brings the case within the rules of equitable conversion. It is true that the sale directed was not completed, but that at least was not the fault of the decree itself. The rights of the parties were fully settled by the decree. There being, therefore, an absolute direction to sell, agreed to by the St. Johns Gas Company itself, it would seem that equitable conversion may properly be declared to exist in this case in favor of the plaintiffs.

3. If, however, an equitable conversion is declared, it follows that the plaintiffs are entitled to the same proportion, that is, one fifth, of the income of the property. Strictly speaking, if there is a conversion into money, income should be the legal rate of interest, that is, 6 per cent. But the fact that the defendant the St. Johns Gas Company is practically defunct, and is only represented by debenture trustees, has not only prevented actual conversion by sale or by conveyance of an undivided interest, but has also prevented arbitration, which should determine the value. There is no principal, therefore, upon which to calculate the 6 per cent income. Consequently, in order to do equity between the parties and prevent the plaintiffs from suffering from these circumstances, over which they have no control, and for which in a sense the St. Johns Gas Company is alone responsible, one fifth of the actual net income from the property must be considered as going to the plaintiffs.

There might be a question as to the date from which this income shall be considered as belonging to the plaintiffs. There

Rounds v. St. Johns Gas Co.

is no question that it would run from the date, June 30, 1913, of the consent decree which directed a sale, for an agreement of sale is a prerequisite to applying the doctrine of conversion. The petition seeks to carry the date back to October 25, 1909, when the fee was earned under the decree against the United States. This, however, cannot be. An agreement of sale is a prerequisite, and there was no such agreement at that time. The only agreement then in force was that of 1906, which provided a percentage fee, but said nothing of sale. The second contract, that of 1910, does provide for a sale, and the income should run from that time if the contract is to be considered as binding upon the gas company, which is contested.

It is true the gas company is not a party to this contract, but it seems to have been in 1910 practically defunct, and represented by the debenture trustees. The facts of the case admit of no other construction, and it would be pushing technicality to an extreme to hold otherwise. The agreement in evidence does not give the month and day, and, as it was incumbent upon the plaintiffs to show this, it must be construed against them, and considered as dated in the fall of 1910, say September 1, as defendants agree. A decree, therefore, should be entered in favor of the plaintiffs for one fifth net income of the property from the date of the agreement of 1910, as shown by the receiver's account.

It is so ordered.